The next case is number 22-1099, Nilsen Licurgo et al. v. Merrick B. Garland. At this time, would Attorney Estrada please introduce himself on the record to begin? Good morning, Your Honors. My name is Carlos Estrada. I'm the attorney representing Mr. and Mrs. Licurgo. May it please the Court, if you would allow me, please, one minute for rebuttal in case it's needed. I would appreciate that. Sure. Thank you. Mr. and Mrs. Licurgo are both natives and citizens of Brazil. They have two American-born children, one of whom has Kawasaki disease. He's still being treated for that, although less frequently now, and he also suffered at the time of the hearing for cancellation of removal. He also had just recently been diagnosed with attention deficit hyperactivity disorder, ADHD. I spoke with the family, actually, just this Friday, and he has now also been diagnosed with anxiety and depression, and he's also being treated for that. But before their hearing, before Mr. and Mrs. Licurgo had their hearing, they had to contend with a couple of things in immigration court. First of all, I don't think I'm saying anything that people don't know, that the immigration courts in our country have been in disarray for quite some time. I'm not saying that myself, actually. That was the president of the National Association of Immigration Judges who said that, who compared them to trying cases, death penalty cases in traffic court setting. And it is with this in mind that in 2018, when Mr. and Mrs. Licurgo went to the immigration judge in Boston, they had to contend with something else, too, that was going on at that time. All the immigration judges were being subjected to a new system called the performance metrics, where they had to complete 700 cases per year, which works out to about, I believe, four cases per working day. So I'm not talking about simple cases. I'm talking about complete cases, literally four trials per day. That's exactly what was going on at the time. So they were being evaluated by whether they completed those 700 cases or not. Now, in this case – I don't want to tell you how to do your argument, but, you know, there's an argument that there's no prejudice shown if you're making a due process argument. So I just want to make sure you have a chance to address that before your time is up. I know. I do intend to address that, Your Honor. Yes. So based on this, Mr. and Mrs. Licurgo were given 15 minutes to present their case, 15 minutes to present the entire case, the rationale being that they both had already submitted declarations about the hardship that their son would suffer. Now, 15 minutes is nowhere near enough to present any case, much less a cancellation of removal case. A cancellation of removal case requires oftentimes corroboration of the – and that's another issue that the BIA also touched upon. It requires Mr. and Mrs. Licurgo to actually explain to the judge how their children would be – how they would suffer if they went back to Brazil. Now, the immigration judge on that day actually had a little bit of an attitude against the counsel for my clients. Could I – and again, you don't have to, but it would be helpful to address the jurisdictional issue. Yes. When the government is saying we don't even have jurisdiction to hear what you're saying. Right. You've got to get that aside. Yes. Absolutely. I will address that immediately if you'd like. Yes, there is indeed jurisdiction because this is not a purely factual question. This is a question of law. Cancellation of removal requires people to actually meet a certain standard, which is exceptional and extremely unusual hardship. The exceptional and extremely unusual hardship is defined in the statute. And that is a very, very high standard, and it's also a legal standard. It's not whether – I can say that, okay, I have hardship, but what level? That's what makes it a legal question. And that's indeed – that hasn't changed. And I know that the government relies on Patel v. Garland, which is a Supreme Court decision. But Patel addresses factual challenges to factual issues, not to legal issues, and only mentions cancellation removal cases in passing, basically. It doesn't really – it refers to them, but it doesn't really discuss cases about cancellation removal because whether the standard has been met is indeed a legal question. Now, where – during the hearing, again, we were – my clients were told multiple times, you know, basically counsel for them was being told to hurry up, hurry up, hurry up. So that was fundamentally unfair to them. Why? Because they were – for example, at one point, Judge – when counsel for Mrs. LeCour was asking a question, the immigration judge interjected and said, move on, next question. But didn't the judge – wasn't this all in the context of the judge saying he read the declarations, he listened to your client testify, and he believed everything she was saying? Most lawyers would be glad to hear that and would not insist on keeping their client testifying further. The problem became something she couldn't really address, which is what was – how adequate or inadequate was the medical care for that treatment in Brazil. Right. And I don't think I read your brief as saying there was something she had to say about that that she was not allowed to say. Well, that was addressed actually in the appeal to the BIA, Your Honor. Subsequent counsel submitted the Department of State report on conditions in Brazil, and that was submitted to the BIA as well as – I think it was 115 pages about the evaluation for their child. And that was – again, that was completely ignored by the BIA. They just said, well, the counsel for them just agreed to that, to 15 minutes. But even if counsel for Mr. and Mrs. Licordo had agreed to that, that does not absolve the immigration judge from conducting a fair and complete hearing, and that's exactly what did not happen here. There's something else that I don't know if – I don't know why, but nobody picked up on. The judge treated their applications for cancellation or removal as if they were asylum applications and did not hear from Mr. Licordo at all. It turns out that cancellation or removal applications are individual applications. Each person who wants to apply for cancellation or removal has to submit his or her own application, and that application has to be heard. There's basically what the judge did here. He just ascribed the testimony, short as it was and interrupted as it was, to Mr. Licordo and denied his application as well. So Mr. Licordo, in essence, has never really presented his case in front of the immigration judge, and he never really – well, the BIA wouldn't have jurisdiction to hear it, but Mr. Licordo just never quite presented it. Can I just ask – remind me what the ground for removal was? The ground for removal – well, they were – they had applied – originally they had applied for asylum. Basically, it's just overstaying their visa. That's really the – there's no criminal issue. Has this case gone through our camp process or mediation? We – no, Your Honor, it has not. No, no, no. No, we – it just hasn't. Sometimes we have – I tried to do that recently with the case, but then – because in the context of asking for prosecutorial discretion, which is something that we were able to do under the previous – not the previous administration, the administration before that, and we – if I may just – Yeah. And unfortunately, the government in the other case I had, they said that they could not agree to prosecutorial discretion, so we just had to continue with the case, Your Honor. Any – Thank you. Thank you. Thank you. At this time, would Attorney Groff please introduce herself on the record to begin? Good morning, Your Honors. Stephanie Groff for the Attorney General. Your Honors, this court lacks jurisdiction to review the petitioner's application for cancellation of removal as petitioners fail to present a constitutional or legal claim. However, even if this court were to assume jurisdiction, this court should uphold the agency's well-reasoned determination that petitioners fail to meet and establish the requisite hardship if they were to be removed to Brazil. Could you help just with – and this may be background rather than logically connected, but why is it that the country is trying to deport these – this family? I usually see something in the record that informs the discretion, and it wasn't obvious to me here why. Yes, absolutely, Your Honors. So as my counsel mentioned, petitioners overstayed their visa. They came to the United States as visitors well over 10 years ago, which is necessary for cancellation of removal. And before the immigration court, they applied for asylum with USCIS, which is part of the Department of Homeland Security. With that, they withdrew their applications and were placed into removal proceedings in front of an immigration judge. Sometimes this happens because one cannot just apply for cancellation of removal. It has to be in the proceedings before an immigration judge. And before the immigration judge, their notice to appear that the Department of Homeland Security presented – Was the trigger for the removal their seeking asylum? Well, yes. They would not have been in this situation specifically. They were placed in immigration proceedings because they filed an affirmative application with USCIS. After being here for 10 years with two children, one of whom's got a serious disease? Yes, Your Honors. And because they sought asylum, now they're being removed? So it's not discussed on the record, but based on the NTA and discussion and testimony, yes, they had filed for asylum. And then I believe – I would need to double-check – withdrew their applications. Has the thought about exercising discretion been considered by the government? So we have not been reached out to about the possibility of holding this court in abeyance. If Petitioner's Counsel wants to seek out prosecutorial discussion, it would need to be with the Department of Homeland Security. However, I do know that each office right now has different standards on whether they are agreeing to prosecutorial discretion, but we haven't been sought out or questioned about it. I know that the government has in some other cases found helpful our camp process, the court-assisted mediation. Yes, Your Honor. Again, I have not been addressed or questioned about that or sought that out, because in this case we do believe that this court first does not have discretion as to the cancellation and hardship determination, and even assuming jurisdiction, this court should uphold the finding. And yes, the government does acknowledge that this is a very difficult case. Petitioner's son does suffer from Kawasaki disease and other illnesses and educational limitations. However, cancellation is a very hard thing to meet and a difficult burden, and here petitioners just have not done that. And this court also has recently held in Martinez – Just on the jurisdiction – I'm sorry, you can finish that thought. Well, it has to all do with it. Okay. Domingo Martinez. Yeah, right. You're not denying that the due process claim is something we have jurisdiction over? No, absolutely. This court does hold jurisdiction over it because it is a constitutional claim, and this court, for the due process argument, should uphold the agency's finding that a due process violation here was not committed. And also, this court does have discretion to address other claims related to the due process and fundamental fairness that petitioners have stated. But going back to jurisdiction, yes, the Supreme Court's recent decision in Patel noted that under Title VIII, Section 1252A2B1, that courts generally lack jurisdiction over discretionary findings, and because the petitioners here do not present a colorable legal or constitutional claim as to the hardship determination, generally this court lacks jurisdiction. But what I was previously stating, this court recently actually held in Domingo Mendez, which two of your honors were on that case, that when the jurisdictional question is ambiguous but the merits are straightforward, this court can kind of just assume jurisdiction and address the merits. And that would be appropriate here. The government argues that the agency's determination is well-reasoned. It is, you know, while acknowledging the very difficult part of the situation, the ultimate issue in this case was the record was not corroborated to Mrs. Locurgo's statements that if removed to Brazil, their son would struggle based on his Kawasaki disease and other educational limitations. And the board upheld the immigration judge's finding. Specifically, the board looked to the two submitted country condition articles before the immigration judge and noted that, yes, while Brazil is having economic and unemployment issues, there's nothing to specifically address any issues they would have treating Kawasaki disease, other illnesses. And there was nothing in the record specifically about how Brazil would be able to handle the educational limitations that petitioner's son experiences. But moving on to the due process claims, I was discussed by my... I'm sorry. I just want to return to the camp process before you leave this. So you have acknowledged, I think, quite correctly that this might come somewhat close to exceptional and extremely unusual, but you say the standard is really high and it doesn't make it, right? But the camp process isn't based on that. It can be based on other factors. And I go back to one of the questions that one of my colleagues asked about, you know, why is the government so determined to go forward with this removal? Is it true that the only available remedy, even through our camp process, which our camp process involves DOJ, but the only available remedy would be to go back and ask the other agency for prosecutorial discretion? Would DOJ have no ability to be involved in that? Well, the Department of Justice is in communication with the Department of Homeland Security. However, prosecutorial discretion has always been an agency-based issue, and so therefore Department of Homeland Security firmly believes it's within their discretion whether or not they would like to, say, stay the removal of a petitioner or not have them as a priority to potentially remove. However, I will note that there are other avenues, but it's not the government's burden or ability to go forward. For instance, the petitioners here raised an issue of ineffective assistance of counsel. In my brief, I noted that that was not properly before this court, that their previous counsel acted in a way that was, say, ineffective. I'm actually asking a question about DOJ's role in mediation in our camp process, not what the legal standards are. Yes, I was just suggesting that if possible, petitioners' counsel could file a motion to reopen with the Board of Immigration Appeals, which is technically the Department of Justice. Isn't that the type of thing that could be worked out in mediation? Yes, Your Honor, and the government would not be opposed to mediation. Again, we just have not been consulted or asked about it. But turning to the due process issue, which this court asked previously about here, the court should not disturb the agency's determination that a due process violation did not occur. While the immigration judge did state that Ms. Locurgo would have about 15 minutes to testimony, petitioners' counsel agreed to this, and the immigration judge gave both sides an opportunity to ask more questions if needed. The immigration judge laid it out, and this is also not necessarily a case that every issue needed to be addressed. For instance, the Department of Homeland Security in this case specifically noted that they did not have any issues with good moral character, the petitioner's continuous physical presence, and they were able to narrow down the issue specifically to hardship, whether it's exceptional or extremely unusual, to petitioner's children. Additionally, my opposing counsel mentioned that Mr. Locurgo was prevented from testimony. That is just not the case. It was actually petitioner's counsel before the immigration judge that stated that he would not be presenting him because he was not going to be testifying to anything that was outside this declaration. And the immigration judge specifically noted to petitioner's counsel that his issue was specifically with the lack of cooperative documentary evidence to show that if removed to Brazil, their son, with his Kawasaki disease, would not be able to receive adequate health care hardship or, due to his educational limitations, would not be able to receive the adequate care. And this court should therefore uphold the due process finding and find that there was no fundamental fairness, and even assuming that there was no prejudice to that.  But the board properly found that this evidence was not properly before them. It was not submitted to the immigration judge. And even then, it did not establish that cooperative standard that the immigration judge ultimately denied the case on. And therefore, we would ask this court to dismiss in part and deny the petition for review. Thank you. Thank you. Thank you. At this time, if Attorney Estrada would introduce himself back on the record for his one-minute rebuttal. Yes. Good morning again. Carlos Estrada. Your Honor, DHS never opposed a grant in that, if we look at the transcript of the proceedings, DHS never opposed a grant to cancellation of removal. They simply said they had concerns about corroboration. It was the immigration judge who took it upon himself to say that that was not enough. But DHS never, ever opposed a grant. Second, with respect to cancellation with the mediation program, as I indicated before, I did try once with one case. I don't think the issue is what you did or didn't do. I think you just heard government counsel say they're open to it. Sure. And I assume you're open to it.  Absolutely, we have no problem with that, Your Honor. So hopefully this time they'll be more receptive to mediation. But also, the Board of Immigration Appeals should have remanded the case for a new hearing because if corroboration was the problem, there was corroboration that was not available at the time of the hearing, and that was the evaluation. Thank you. Thank you. That concludes argument in this case.